IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**JAMIE C. LATTIN,**

    **Plaintiff,**

v.                                                                     Case No. 1:20-CV-20-01030

**THE FEDERAL BUREAU OF INVESTIGATION,**

    **Defendant.**

**COMPLAINT FOR INJUNCTIVE RELIEF PURSUANT TO 5 U.S.C. § 552(a)(4)(B), THE FREEDOM OF INFORMATION ACT**

**Preliminary Statement**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), for a court order directing the Federal Bureau of Investigation (the "FBI" or the "Bureau") to release records Plaintiff requested under FOIA on April 2, 2019. Defendant denied Plaintiff's request to release **records from an investigation** of a targeted threat against Aztec High School ("AHS" or the "School") that was **closed** by the Bureau in **March of 2016**. The Bureau has admitted that it interviewed the individual who made the threat, William Atchison, in March of 2016, and closed the investigation shortly thereafter. The following year, William Atchison acted on his threat to conduct a school shooting at AHS and killed two students before killing himself (the "AHS School Shooting"). The FBI asserts the records Ms. Lattin has requested are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(7)(A). This exemption applies when the requested records relate to a pending or prospective federal law enforcement proceeding and release of the requested information could reasonably be expected to interfere with those enforcement

proceedings (the "7(A) Exemption"). 5 U.S.C. § 552(b)(7)(A). Ms. Lattin asserts the FBI's reliance on the 7(A) Exemption is not reasonable given the only suspect who has ever been identified in the AHS School Shooting is William Atchison and he is dead, and has represented in published material that William Atchison acted alone. Accordingly, the killing of two high school students on the property of a municipal school district in New Mexico by a lone shooter who is now deceased is not an action that could reasonably be anticipated to give rise to a future law enforcement proceeding.

## I.     JURISDICTION AND VENUE

1.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves a claim that arises under the statutes of the United States, to wit, the FOIA.

2.      Pursuant to 5 U.S.C. § 552(a)(4)(B), the federal district court in the district where the FOIA complainant resides is one of three possible federal forums that have jurisdiction to enjoin a federal agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

3.      Jurisdiction and venue are both proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) because Ms. Lattin resides in Aztec New Mexico and the U.S. District Court for the District of New Mexico serves the entire state.

## II.    COMPLIANCE WITH STATUTE OF LIMITATIONS AND ADMINISTRATIVE EXHAUSTION REQUIREMENTS

4.      Ms. Lattin filed a FOIA request with the FBI on April 2, 2019, seeking records that relate to the Bureau's 2016 investigation of William Atchison's online post on how he might acquire weapons for a mass shooting. *See* Exhibit ("Exh.") 1, FBI FOIA Request No. 1433109-000.

5. On May 3, 2019, David M. Hardy ("Mr. Hardy"), Section Chief with the FBI's Records/Information Dissemination Section ("RIDS") wrote Ms. Lattin to advise her FOIA request was being denied, citing the 7(A)Exemption. *See* Exh. 2, RIDS Decision of May 3, 2019.

6. Mr. Hardy advised Ms. Lattin that she could appeal this decision by writing the Director of the Office of Information Policy (the "OIP") at the United States Department of Justice (the "DOJ") in Washington, D.C., provided her appeal would be postmarked or electronically submitted within ninety days of his decision. *Id.; see also* 28 C.F.R. § 16.8(a), DOJ Regulations on FOIA (an administrative appeal of a FOIA decision must be filed within 90 calendar days after the date of the response).

7. On August 1, 2019, Ms. Lattin submitted a letter via facsimile to the Director of the OIP appealing the decision to deny her FOIA request on the basis of the 7(A) Exemption. *See* Exh. 3, Administrative Appeal, Aug. 3, 2019.

8. Ms. Lattin's administrative appeal to the OIP was timely filed and properly identified the component of the RIDS decision that was being appealed and aloo identified her request by the number the Bureau assigned to it. *Id*.; *see also* 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa) (time frame for filing appeal of adverse decision); 28 C.F.R. § 16.8(a) (requirements for filing a proper appeal under DOJ FOIA regulations).

9. On September 13, 2019, Christina Troiani, Associate Chief of OIP's Administrative Appeals notified Ms. Lattin that she was affirming the FBI's action on Ms. Lattin's FOA request. *See* Exh. 4, Letter from Christina Troiani, dated September 13, 2019.

10. The statute of limitations that applies to suits for judicial review of FOIA decisions is six years. *See* 28 U.S.C. § 2401(a) (general federal statute of limitations); *Spannaus v. DOJ,* 824

F.2d 52, 55-56 (D.C. Cir. 1987) (applying the general federal statute of limitations to FOIA claims).

11. Ms. Lattin has exhausted all administrative appeal requirements that apply to suits seeking judicial review of FOIA decisions and is filing this suit within the applicable statute of limitations.

### III.   THE PARTIES

12. Ms. Lattin is an individual who resides in the City of Aztec, in San Juan County, New Mexico.

13. The FBI is a federal law enforcement agency that operates under the DOJ and is subject to oversight and direction by the U.S. Attorney General.

### IV.   FACTS

**A.   The FBI's 2016 Investigation of a Targeted Threat Against AHS**

14. Sometime on or around the first week of March of 2016, the FBI Office in Boston received notice that an individual had inquired online about an economical way to get a gun and ammunition to shoot up his former high school (the "Targeted Threat").

15. The FBI traced the Targeted Threat to an Internet Protocol ("IP") address in Aztec, New Mexico, and to an individual named Brentt Atchison. *See* Exh. 5, FBI Use Caution Bulletin, produced by City of Aztec on or around July 3, 2018, in response to request to City of Aztec for Inspection of Public Records at Aztec Police Department ("APD") that relate to investigation of William Atchison.

16. The FBI identified the school in question—the focus of the Targeted Threat—as AHS. *See id.* at 4 (handwritten notes from APD).

17. Upon information and belief, the FBI dispatched a Special Agent(s) from its Albuquerque Division – Farmington Resident Agency to investigate the Targeted Threat against AHS. *Id*. at 3 (FBI business card for Special Agent Monty Waldron) and at 4 (handwritten notes by APD on FBI Use Caution Bulletin – listing the name "Lance Roundy" and "Threat Assessment").

18. Upon information and belief, the FBI entered its information on the Targeted Threat into the FBI's Guardian Terrorist Threat and Suspicious Incident Tracking System ("Guardian").

19. The FBI interviewed Brentt Atchison and his family, including his younger brother William Atchison, in March of 2016.

20. During the course of those interviews, the FBI determined the individual who posted the Targeted Threat against AHS was, in fact, William Atchison, and not Brentt Atchison.

21. The FBI closed its investigation of the Targeted Threat against AHS shortly after interviewing William Atchison in March of 2016.

22. Upon information and belief, an FBI supervisor would have had to review and the threat assessment information that was entered into Guardian by the FBI agent(s) who interviewed William Atchison and independently confirm the investigation should be closed.

**B.     William Atchison's Connection to AHS**

23. William Atchison had been suspended from AHS in March of 2012 for one day after he wrote a comment on a classroom whiteboard that was construed as a potential threat against the School.

24. Upon information and belief, William Atchison wrote down the timeline of the 1999 School Shooting in Columbine, Colorado and eulogized the Shooting, and implied he wanted to take the same action against AHS.

25. William Atchison never returned to AHS after he was suspended in the spring semester of 2012 and officially de-enrolled in August of 2012.

26. Upon information and belief, the FBI did not contact AHS as part of its investigation of the Targeted Threat.

C. **The AHS School Shooting and the Investigation of the Shooting**

27. On December 7, 2017, William Atchison acted on his threat against AHS, entered the 800/900 Building at the School and shot and killed two students.

28. One of the students who was killed was Ms. Lattin's daughter, Casey Jordan Marquez.

29. William Atchison subsequently killed himself with a gunshot to his head as officers from the APD arrived on the scene.

30. APD officers found William Atchison expired near a second floor breezeway connecting the 800/900 Building to another Building of the School.

31. APD Officers recovered a Glock semiautomatic handgun from William Atchison, several magazines of ammunition, and a backpack that contained a thumb drive with various files documenting his planning for the Shooting.

32. APD were advised the FBI would be investigating the shooting with the New Mexico State Police ("NMSP") and the San Juan County Sheriff's Office (the "SJCSO").

33. FBI Officers arrived on the scene and conducted a search of the thumb drive to identify the Shooter.

34. FBI Officers initially identified the Shooter as Brentt Atchison and told NMSP they had investigated him in 2016.

35. The Shooter was subsequently confirmed to be William Atchison.

36. At a Press Conference held the day after the Shooting, FBI Agent Terry Wade ("Agent Wade") publicly acknowledged that the Bureau had interviewed William Atchison in 2016 in regard to a comment he posted on an internet gaming website. *See* Exh. 6, KRQE News, Gunman identified in deadly Aztec school shooting", Dec. 8, 2017.

37. Agent Wade disclosed that Mr. Atchison had posted a comment soliciting advice on how he might acquire a gun to conduct a mass shooting at a school. *Id*.

38. Agent Wade confirmed the FBI closed its investigation of the Targeted Threat against AHS in 2016 after interviewing William Atchison, who assured the FBI he had no plans to shoot up AHS and owned no guns at that time. *Id*.; *see also* Exh. 7, Hannah Grover, [Farmington] Daily Times, "FBI didn't link online posts to Atchison until after Aztec school shooting", April 18, 2018 (reporting that: "The 2016 FBI investigation ended after the agency did not find evidence of a crime having been committed and found that no firearms were in his [William Atchison's] possession, according to FBI agent Terry Wade who spoke during a Dec. 8 press conference.").

39. On April 17, 2018, Detective Kyle Lincoln, the SJCSO's lead investigator on the AHS School Shooting publicly stated that his Office, the NMSP and the FBI were wrapping up their inquest into the AHS School Shooting and it appeared that William Atchison had acted in

pursuit of a personal agenda. *See* Exh. 8, Joshua Kellog, [Farmington] Daily Times, "Aztec high school shooter reached out to other shooters, planned shooting online", April 17, 2018, updated April 20, 2018.

    40.    By April of 2018, joint state, local and federal investigation of the AHS School Shooting had determined William Atchison had been in contact with the individual who committed the Munich Mall massacre in the summer of 2016, and had practiced the AHS School shooting online.

    41.    Upon information and belief, notwithstanding revelations of William Atchison's online activities and contacts with individual such as the Munich Mall Shooter, officers working on the joint state, local and federal investigation of the AHS School Shooting have not been able to identify any other suspects who played a role in the Shooting or who aided William Atchison in planning and carrying out the Shooting.

    42.    Upon information and belief, the SJCSO and NMSP closed their investigation of the AHS School Shooting well before April 2019 when Ms. Lattin submitted her FOIA request for records of the FBI's 2016 investigation of William Atchison.

    43.    Both of these law enforcement agencies have provided Ms. Lattin with copies of their records on the investigation of the 2017 AHS School Shooting.

    44.    Upon information and belief, one or both of these agencies have requested that the AHS School Shooting be "cleared" or reported "solved" for purposes of the FBI's Uniform Crime Reporting ("UCR") Program due to "exceptional means", namely the death of the offender. *See* FBI Uniform Crime Report, Crime in the United States, 2018, UCR Downloadable Printable Document on Offenses Cleared, *available at* https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-

the-u.s.-2018/topic-/clearances.pdf, at 2 ("Examples of exceptional clearances include, but are not limited to, the death of the offender (e.g., suicide or justifiably killed by police or citizen").

45.     The FBI has already analyzed information on the AHS School Shooting and published it as part of a public domain report on Active Shooter Incidents in the United States in 2016 and 2017, and represented therein that William Atchison acted alone. *See* Active Shooter Incidents in the United States in 2016 and 2017, FBI Office of Partner Engagement, FBI Criminal Investigative Division, and Advanced Law Enforcement Critical Response Training (ALERRT) Center at Texas State University, and the Federal Bureau of Investigation, U.S. Department of Justice (April 2018) *available online at* https://www.fbi.gov/file-repository/active-shooter-incidents-us-2016-2017.pdf/view, at 7 n. 34 (listing one of the 4 high school shootings as occurring at Aztec High School); at 5 (noting that all 50 shooters identified in the report were male and all acted alone).

46.     The AHS School Shooting did not involve the killing of a federal official or the commission of a crime on or involving federal property.

**D.     Ms. Lattin's FOIA Request for Records from the Bureau's Closed Investigative File**

47.     On April 2, 2019, Ms. Lattin, through her undersigned counsel, filed a FOIA request for FBI records on its **2016 investigation** of the Targeted Threat against AHS, which was closed in 2016. *See* Exh. 1.

48.     Ms. Lattin expressly stated in her FOIA request that she was **not requesting copies of investigative records pertaining to any ongoing investigation of the 2017 AHS School Shooting**. *Id.* at 2.

49.     Specifically, Ms. Lattin stated her request included:

   a. Copies of any and all audio and/ or video recordings or transcripts of interviews of William Atchison (DOB: 3/--/1996; DOD: 12/7/2017; SSN: 592-59-:XXXX) conducted by the FBI between March 1, 2016, and the date the FBI closed the investigation into the 2016 Targeted Threat;

   b. Copies of any and all notes, summaries or transcripts of interviews conducted of William Atchison's father, Wayne Atchison, or his brother Brentt Atchison (possibly misspelled as Brentt Atchinson) between March 1, 2016, and the date the FBI closed the investigation into the 2016 Targeted Threat;

   c. Copies of any and all reports, including supplemental reports, the FBI compiled on the 2016 Targeted Threat between March 1, 2016, and the date the FBI closed the investigation into the 2016 Targeted Threat; and

   d. Copies of any and all communications, including emails, facsimiles, bulletins, exchanged by the FBI with any of the following local law enforcement or municipal entities: APD, SJCSO and NMSP (including communications generated by the FBI and shared with local governmental entities and communications received by the FBI from local governmental entities).

*Id*. at 2.

  50. On May 3, 2019, the Section Chief for the FBI's RIDS notified Ms. Lattin he was denying her FOIA request because the records are part of an investigative file that is exempt from disclosure under the 7(A) Exemption to FOIA. *See* Exh. 2.

51. The FBI's RIDS Section Chief did not provide any further information on how records of the closed 2016 investigation into the Targeted Threat against AHS could reasonably be expected to interfere in a pending or future law enforcement action.

52. Ms. Lattin filed a timely appeal of the RIDS' decision as alleged in paragraphs 7 and 8.

53. Ms. Lattin explained in her written appeal exactly why she did not believe the FBI could properly invoke the 7(A) Exemption as a basis for withholding records on its 2016 investigation of the Targeted Threat against AHS. *See* Exh. 3 at 4-7.

54. On September 19, 2019, the Assistant Chief for the OIP Administrative Appeals notified Ms. Lattin in writing that she had reviewed Ms. Lattin's FOIA Appeal and was affirming the Bureau's decision to deny her FOIA request for records of the FBI's 2016 investigation into the Targeted Threat against AHS. *See supra*, paragraph 9.

## COUNT I: INJUNCTIVE RELIEF

55. Ms. Lattin incorporates by reference all her preceding allegations in paragraphs 1-54 of this Complaint.

56. There is no law enforcement proceeding that is currently pending with respect to the AHS School Shooting.

57. There is no law enforcement proceeding that is currently pending with respect to the 2016 Targeted Threat against AHS.

58. The FBI is not currently investigating any individuals who are suspected of conspiring with William Atchison in planning or implementing the AHS School Shooting.

59. The FBI lacks reasonable suspicion that William Atchison received material support from any other individuals in planning or making the 2016 Targeted Threat against AHS.

60. Upon information and belief, the FBI compiled the records in its 2016 investigative file of the Targeted Threat against AHS for either a law enforcement or domestic intelligence purpose.

61. The FBI concluded no further Bureau action was warranted on the 2016 Targeted Threat against AHS when it officially closed its investigation into this Threat in 2016.

62. The 7(A) Exemption is "temporal in nature", and an agency's reliance on the 7(A) Exemption "may become outdated when the proceeding at issue comes to a close." *Citizens for Responsibility & Ethics in Washington (CREW) v. U.S. Dep't of Justice*, 746 F.3d 1082, 1097 (D.C. Cir. 2014).

63. The FBI does not pursue law enforcement investigations against suspects who have died, the DOJ does not pursue a criminal prosecution when the offender is dead, and courts do not preside over *criminal* proceedings against defendants who are deceased. *See Doe v. United States*, 411 F. Supp. 3d 1321, 1329 (S.D. Fla. 2019) (". . .[N]ow that Mr. Epstein is deceased, any investigation regarding his criminal culpability has ended."); *Id*. at 1326 ("Here, there is no longer an Article III controversy permitting the Court to address the appropriateness of the remedy of rescission. As a result of Mr. Epstein's death, there can be no criminal prosecution against him and the Court cannot consider granting this relief to the victims.") (citing *Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018)).

64. The FBI's UCR procedures authorize other law enforcement agencies to clear offenses by exceptional means when the offender has died. *See* FBI Uniform Crime Report, Crime

in the United States, 2018, UCR Downloadable Printable Document on Offenses Cleared, *available at* https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/topic-/clearances.pdf, at 2 ("Examples of exceptional clearances include, but are not limited to, the death of the offender (e.g., suicide or justifiably killed by police or citizen").

65. Upon information and belief, the FBI has no *reasonable* anticipation that it might initiate a law enforcement proceeding over the AHS School Shooting at any point in the future given that:

   a. The Shooter is officially dead, has been since the day of the offense and is not expected to resurrect.

   b. The FBI has determined the Shooter acted alone and has published that conclusion.

   c. The FBI has no jurisdiction to prosecute an action for murder that occurred on municipal school property in the State of New Mexico, did not involve the killing of a federal official, destruction of or threat against federal property, and/or otherwise involve the commission of a federal offense.[1]

66. The FBI's justification for invoking the 7(A) Exemption as a basis for withholding the records Ms. Lattin has requested is insufficient because it is neither logical nor plausible based on the facts alleged in paragraphs 56-59, 61, 63-65. *See Judicial Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C.Cir. 2013) (quoting *Am. Civil Liberties Union v. U.S. Dep't of Def.*

---

[1] Ms. Lattin acknowledges that possessing or discharging a handgun in a school zone would constitute a federal misdemeanor offense, *see* 18 U.S.C. § 1924(a)(4). But Ms. Lattin contends the FBI does not have a reasonable anticipation of prosecuting William Atchison for this lesser offense to the murder of her daughter and another student during the AHS School Shooting.

(ACLU/DOD), 628 F.3d 612, 619 (D.C.Cir. 2011)) ("An agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.' ").

67. Upon information and belief, the FBI does not want to release the investigative file for the 2016 investigation it performed on the Targeted Threat or any threat assessment it opened and closed in Guardian in 2016 because it would embarrass the FBI and/or expose the FBI to possible liability for negligence. *See* [Doc. 1] in *Murphy v. United States*, Case No. 1:20-CV-00557 (D.N.M. June 8, 2020).

68. Neither one of the reasons cited above in paragraph 66 constitute a valid basis for withholding records under FOIA.

69. The FBI has improperly withheld non-exempt records that are responsive to Ms. Lattin's FOIA request for information from the Bureau's 2016 investigation of the Targeted Threat against AHS.

**PRAYER FOR RELIEF**

In view of the aforementioned facts, Ms. Lattin requests that this Court:

1. Order the FBI immediately process Ms. Lattin's FOIA request of April 2, 2019 (Request No. 1433109-000);

2. Order the FBI to conduct a thorough search for all responsive records to that request;

3. Order the FBI promptly disclose the responsive records in their entirety to Ms. Lattin and make copies available to her, and/or alternatively, order the FBI to produce the records for in camera inspection to determine if a basis exists for asserting the records could reasonably interfere with a pending or prospective law enforcement proceeding;

4. Award Ms. Lattin her costs and reasonable attorney's fees incurred in bringing this action as authorized under 5 U.S.C. § 552(a)(4)(E); and

5. Grant Ms. Lattin all such other relief that the Court deems just and proper.

Respectfully submitted:

**ROBLES, RAEL & ANAYA, P.C.**


By: /s/ Luis Robles
     Luis Robles
     Philomena Hausler
     Attorneys for Plaintiff
     500 Marquette Ave., NW, Suite 700
     Albuquerque, New Mexico 87102
     (505) 242-2228
     (505) 242-1106 (Facsimile)
     luis@roblesrael.com
     philomena@roblesrael.com